UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES ANDERSON et al., ) | |
| ) | Case No. 06 C 4229 |
| Plaintiffs, ) | |
| v. ) | Judge Joan B. Gottschall |
| ) | |
| NORMAN LILES et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION & ORDER

A local painters' union (the "Union") and trustees of various benefit funds (the "Funds") brought this action under Section 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3), and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.[1] Plaintiffs have moved for summary judgment.

### I. BACKGROUND

Norman Liles, the owner of Putnam County Painting, a sole proprietorship, signed a collective bargaining agreement ("CBA") with the Union on June 27, 2001. (Pls.' Stmt. (Doc. 126) ¶¶ 10, 27.)[2] For each employee performing work covered by the agreement, Liles was required to check off and remit dues and defense fund assessments to the Union, and to make monthly contributions on behalf of the employees to the Funds. (*Id.* ¶¶ 18-20.)

The original CBA signed by Liles ("1999-2004 CBA") had been negotiated between the Union and an association of painting contractors. (*Id.* ¶ 13.) It provided:

---

[1] The plaintiffs include the Painters District Council No. 30 of the International Union of Painters and Allied Trades, AFL-CIO, and Charles E. Anderson and Ricky Vandegraft, trustees for the Painter's District Council No. 30 Health and Welfare Fund, the Painter's District Council No. 30 Pension Fund, the Northern Illinois Painters, Decorators and Drywall Finishers Joint Apprenticeship and Training Fund, the International Joint Painting, Decorating and Drywall Apprenticeship and Manpower Training Fund, and the International Brotherhood of Painters and Allied Trades Union and Industry Pension Fund.

[2] Where facts are undisputed, the court has cited the parties' Local Rule 56.1 Statements of Material Fact. Any disputed facts are identified accordingly.

> This Agreement shall be in effect until April 30, 2004, and shall continue in effect from year to year thereafter and, unless the parties otherwise agree, the parties hereto hereby specifically adopt the Agreement between the Union and the Association for the contract period subsequent to April 30, 2004, and each such subsequent Agreement thereafter unless written notice of such termination of the Agreement is given from the Employer or the Union at least one hundred twenty (120) days prior to the expiration of the then current Agreement adopted by reference.

(1999-2004 CBA (Doc. 127-5) at Art. XVII § 1.) The Union and the contractors' association subsequently negotiated two more CBAs covering the periods May 1, 2004 through April 30, 2008 ("2004-2008 CBA"), and May 1, 2008 through April 30, 2013 ("2008-2013 CBA"). (Pls.' Stmt. ¶¶ 16-17.)[3] The 2004-2008 CBA contained a similar automatic renewal ("evergreen") clause requiring an employer to give 120 days written notice to avoid becoming bound to the subsequent agreement. (2004-2008 CBA (Doc. 127-6) at Art. 18 § 18.1.)

From August 2001 until April 2004, Liles submitted monthly reports to the Union and the Funds for Putnam County Painting listing the hours worked by covered employees and wages paid. (*Id.* ¶ 29.) Liles also submitted the required contributions, dues, and assessments for certain months during this period. (*Id.* ¶¶ 31-32.) On July 25, 2002, Liles incorporated defendant Illinois Valley Coating, Inc. ("IVC"). (*Id.* ¶ 12.) Like Putnam County Painting, IVC was owned and managed by Liles; it provided similar painting services, employed some of the same workers, and operated out of the same location. (*Id.* ¶¶ 49, 52-56, 58-60, 62-71, 74-78, 81, 84-87.) Liles has made no payments to the Union or the Funds since April 2004, and no payments were ever made on behalf of IVC. (*Id.* ¶¶ 33-34.)

---

[3] Plaintiffs' Rule 56.1 Statement seeks to authenticate the two subsequent CBAs. (Pls.' Stmt. ¶¶ 16-17.) In response to these paragraphs, defendants note that Liles never received a copy of either the 2004-2008 CBA or the 2008-2013 CBA. However, defendants do not point to any evidence demonstrating a genuine dispute of fact about the authenticity of these agreements. The court will disregard any factual dispute which is not properly supported by reference to record evidence. *See* L.R. 56.1(b)(3); *In re Motorola Secs. Litig.*, 505 F. Supp. 2d 501, 504 n.1 (N.D. Ill. 2007).

On November 8, 2006, Liles incorporated defendant Putnam County Painting Inc. ("Putnam Inc."). (*Id.* ¶ 11.) Soon after the new company was incorporated, Liles began conducting all his business operations as Putnam Inc. (*Id.* ¶¶ 101, 103.) Putnam Inc. continued to be managed by Liles, perform the same type of work, employ the same workers, and operate out of the same facility. (*Id.* ¶¶ 49, 52-55, 57, 59, 61, 64-66, 71-74, 76, 79-80, 85, 87.) Putnam Inc. has never submitted monthly reports or made payments to the Union or the Funds. (*Id.* ¶ 35.)

According to plaintiffs, Liles never effectively terminated any CBA and thus continued to be bound by the subsequent agreements. In addition, they argue that, by operation of law, IVC and Putnam Inc. became bound by these agreements as well. The Union and the Funds conducted two audits of Liles' businesses. (Pls.' Stmt. ¶¶ 108, 115.) And plaintiffs contend that defendants now owe $769,869.61 plus interest for the period August 1, 2001 through December 31, 2008.

Liles acknowledges that he signed onto the 1999-2004 CBA but contends that he withdrew from the Union on April 30, 2004, that he incurred no additional liability after that date, and that the work performed by certain employees was excluded from the CBA. In his deposition, Liles testified that Mark Leonard, a Union business agent, first approached Liles about joining the Union. Leonard gave Liles a copy of 1999-2004 CBA and asked Liles to look it over. (Liles Dep. (Docs. 130-2, 130-3, 130-4, 130-5, 130-6) at 57-58.) Some time later, Leonard and another Union official met with Liles at his office. (*Id.* at 58.) Liles was reluctant to agree to the CBA. He had a good relationship with his workers, and members of the Union had refused to picket his projects. (*Id.* at 56.) Leonard explained to Liles that the Union was particularly interested in making Liles' painters part of the organization. Liles was the only

3

industrial painting contractor in the area, and the Union believed it would be an asset to their organization if painters performing this work became Union members. (*Id.* at 60.) In order to encourage Liles to sign on, Leonard made two promises. First, Leonard assured him that painters working in Liles' "shop" would not become Union members. (*Id.*) And, second, Leonard told Liles, "if it doesn't work out, you let me know and you can get out of the union at any time you want. You just call me and tell me you want out of the union and you're out." (*Id.*) After receiving these assurances, Liles signed the 1999-2004 CBA. (*Id.* at 61.)

At some point before April 30, 2004, Liles called Leonard and told him that he wanted to terminate his involvement with the Union. (Defs.' Stmt. (Doc. 137) ¶¶ 14-15.) According to Liles, Leonard told him that he needed to send a letter to the Union formally withdrawing. (Liles Dep. at 65-66.) The parties agree that, on April 30, 2004, Liles sent a brief letter to the Union:

> Notice to the District Council No. 30 and Local 465:
>
> Please be advised that the new collective bargaining agreement is not acceptable to me and is not in our best business interest. Therefore, I will not be signing the agreement.
>
> Please consider this my official notice, that as of May 1, 2004, I am withdrawing from the union.
>
> Sincerely,
>
> Norman Liles Jr.
> Owner
> Putnam County Painting

(Liles Dep. Ex. 1 (Doc. 130-7 at 2).) The Union sent a terse response dated May 10, 2004:

> Dear Mr. Liles:
>
> Be advised that your notice of termination is untimely. You are bound to all the terms and conditions of the 2004 - 2008 Collective Bargaining Agreement between Painters District Council 30, the FCA of Illinois and all other independent contractors.

> If you have any questions, please call my office.
>
> Sincerely,
>
> Charles E. Anderson
> Secretary-Treasurer

(Liles Dep. Ex. 2 (Doc. 130-7 at 4).) On May 20, Liles sent another letter reiterating his intention:

> Dear District Council No. 30,
>
> In regards to your response, I am still standing with my decision to withdraw from the painters' union. I notified Mark Leonard and had told him earlier of my intentions and heard nothing more from anyone. For the jobs where union painters will be employed, I will continue to pay into the benefits program for them.
>
> Respectfully,
>
> Norman Liles Jr.
> Owner
> Putnam County Painting

(Liles Dep. Ex. 3 (Doc. 130-7 at 6).)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party is so entitled if no reasonable fact-finder could return a verdict for the nonmoving party." *Patton v. MFS/Sun Life Fin. Distribs., Inc.*, 480 F.3d 478, 485 (7th Cir. 2007). At the summary judgment stage, the court should view the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor. *Cedillo v. Int'l Ass'n of Bridge & Structural Iron Works, Local Union No. 1*, 603 F.2d 7, 11 (7th Cir. 1979). However, the evidence presented at this stage must comport with the Federal Rules of Evidence and be admissible at trial, *United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 510

(7th Cir. 2010), or it must consist of affidavits or declarations "made on personal knowledge, set[ting] out facts that would be admissible in evidence, and show[ing] that the affiant or declarant is competent to testify on the matters stated," Fed. R. Civ. P. 56(c)(4).

### III. ANALYSIS

#### A. Validity of Oral Agreement between Liles and Leonard

In an attempt to defeat summary judgment, defendants argue that, before signing the 1999-2004 CBA, Leonard and Liles agreed on an oral modification of the agreement—Liles could withdraw at any time by notifying Leonard, and Liles would not have to make payments for employees doing "shop work." The parties agree that Liles did not send any written notice until April 30, 2004, the day the 1999-2004 CBA expired. However, defendants contend that, under the modified agreement, Liles' notification was effective in ending the arrangement.

##### 1. Right of the Funds to enforce written agreement

As far as the Funds are concerned, defendants' argument cannot succeed. Section 515 of ERISA, 29 U.S.C. § 1145, permits the Funds, as third party beneficiaries of the CBA, to enforce the written agreement "without regard to understandings or defenses applicable to the original parties." *Central States, Se. and Sw. Areas Pension Fund v. Gerber Truck Service, Inc.*, 870 F.2d 1148, 1149 (7th Cir. 1989). In *Gerber Truck*, a case nearly identical to this one, the employer and the union agreed orally that the employer would be required to pay contributions only for a certain subset of employees covered by the written CBA. In ruling that the employer was bound by the written, not the oral, agreement, the court explained that a multiemployer benefit plan must be able to rely on written agreements in order to establish contribution and benefit rates, and secret side deals between an employer and union would frustrate ERISA's goal of ensuring plan solvency. *Id.* at 1151. In this case, by failing to comply with the 120 day notice

6

provision in the written agreement, Liles become bound to make contributions under the 2004-2008 CBA.

The court does not agree with plaintiffs, however, that Liles also became bound to continue paying the Funds through the term of the 2008-2013 CBA. Liles sent two letters to the Union—on April 30, 2004 and May 20, 2004—stating in plain terms that he was withdrawing from the Union. Although these letters were too late under the evergreen clause to end his obligation immediately, they certainly arrived more than 120 days before the end of the 2004-2008 CBA which expired April 30, 2008. Plaintiffs suggest that Liles' letters were not clear and unambiguous, but it is hard to imagine how the April 30, 2004 letter could have been more definite. It said, "Please consider this my official notice, that as of May 1, 2004, I am withdrawing from the union." That written notice would have been sufficient to end Liles' obligation to the Funds as of April 30, 2008. Consequently, plaintiffs are not entitled to summary judgment for the period after April 2008.

2. Right of the Union to enforce written agreement

Plaintiffs argue that Liles is bound to make payments to the Union as well, because the parol evidence rule bars introduction of Liles' testimony about the oral modification to the CBA which contradicts the written terms. The parol evidence rule generally bars evidence of prior or contemporaneous agreements or negotiations to contradict unambiguous terms of a partially or completely integrated written agreement.[4] *Merk v. Jewel Food Stores Div. of Jewel Cos., Inc.*, 945 F.2d 889, 892 (7th Cir. 1991); Restatement (Second) of Contracts § 215. Plaintiffs cite *Central States, Southeast and Southwest Areas Pension Fund v. Auffenberg Ford, Inc.*, No. 08 C

---

[4] Although the parties do not address choice of law, the court is required to apply federal common law to questions of contract formation in suits brought under Section 301 of the LMRA. *Mohr v. Metro East Mfg. Co.*, 711 F.2d 69, 71 (7th Cir. 1983.)

7

1103, 2009 WL 2145384, at *4 (N.D. Ill. July 9, 2009), which involves a factual scenario similar to this case. An employer claimed that, during negotiations, the union representative made a promise that the CBA would automatically terminate after five years, even though the written agreement contained certain notice requirements. *Id.* at *1-2. The *Auffenberg* court, in ruling that the employer had not effectively terminated the CBA, relied on the parol evidence rule to bar testimony about the negotiations. *Id.* at *4. The case is distinguishable for two reasons. First, *Auffenberg* was a suit between an employer and a pension fund, and the court also based its decision on the holding of *Gerber Truck* that the fund could enforce the written agreement regardless of any defenses. *Id.* at *4-5. Second, the court concluded that the CBA was "clearly integrated," and all the evidence suggested that the written agreement was intended to embody the parties' final bargain. The same cannot be said about the evidence in this case, as the court explains below.

Defendants do not attempt much of a response to plaintiffs' parol evidence argument,[5] but the court's own research turned up the Seventh Circuit's decision in *Merk*. In *Merk*, the court gave a thorough explanation of the parol evidence doctrine. *Merk*, 945 F.2d at 893. The rule only applies when the court concludes, as a matter of law, that the parties intended the agreement to supercede any oral negotiations. *Id*. The court may consider parol evidence in determining the antecedent question: whether or not the writing is completely or partially integrated. *Id*. In a case like this, where one party offers extrinsic evidence of an oral agreement to specifically disregard written terms, the parol evidence rule is inapplicable. *Id.*; *see also Herzog Contracting Corp. v. McGowen Corp.*, 976 F.2d 1062, 1067 (7th Cir. 1992) (quoting *In*

---

[5] Much of defendants' response brief lacks any citation of legal authority. Defendants' do cite one case in support of an equitable estoppel defense—arguing that Liles reasonably relied on Leonard's assurance that the contract could be terminated at Liles' convenience. The court need not reach the question whether estoppel would apply here because the court concludes that the parol evidence rule does not bar evidence of the oral agreement between Liles and the Union.

8

*re H. Hicks & Son, Inc.*, 82 F.2d 277, 279 (2d Cir. 1936) (L. Hand, J.)) ("It is well settled that whatever the formal documentary evidence, the parties to a legal transaction may always show that they understood a purported contract not to bind them; it may, for example, be a joke, or a disguise to deceive others."). It would be inequitable to permit the Union to agree to certain terms and then turn around and use the parol evidence rule to escape the burdens of its agreement.

*Merk* adds another wrinkle to the analysis. In *Merk*, Jewel Food Stores had entered into a collective bargaining agreement setting wage rates and other employment terms for 15,000 union workers in the Chicago area. *Merk*, 945 F.2d at 890-91. Concerned about the possibility that a competitor, Cub Foods, might enter the Chicago market, the parties negotiated a secret provision, not memorialized in the bargaining agreement, that the contract could be reopened should Cub Foods open stores in Chicago. *Id*. When Cub Foods arrived, Jewel took advantage of the "reopener" provision and slashed wages. *Id*. A class of Jewel employees filed suit against Jewel and the union.[6] Although, the *Merk* court noted that, "Mechanical application of the parol evidence rule would thus permit Jewel to introduce testimony regarding the oral side agreement," it held that the oral agreement could not be enforced. *Id.* at 893. The court stated that:

> To avert industrial strife, collective bargaining agreements must be more secure than garden variety contracts. Accordingly, we hold that national labor policy forbids introduction of prior or contemporaneous secret agreements to contradict fundamental terms of a ratified collective bargaining contract. This secret oral reopener is, therefore, inadmissible and unenforceable as a matter of federal law.

*Id.* at 894.

The question in this case becomes whether the *Merk* rule also bars evidence of the oral agreement between Liles and the Union to vary the terms of the 1999-2004 CBA. The court

---

[6] To be more specific, Jewel and the union eventually reached an agreement with each other to retroactively reinstate the CBA wage rates. The plaintiffs in *Merk* consisted of former employees who had retired, quit, or were fired before the settlement and thus did not receive back pay under that agreement. *Merk*, 945 F.2d at 891.

9

concludes that *Merk* is distinguishable, and defendants may introduce Liles' testimony in this case. *Merk* emphasized two critical factors in reaching its conclusion. First, the court was particularly concerned that union employees had relied on the collective bargaining agreement, but that Jewel and the union had "deliberately concealed" their side-deal which put the employees' settled expectations in jeopardy. *Id.* at 895-96. In this case, the Union, rather than the employees, is the plaintiff. There is no evidence that the terms of the agreement were hidden from employees, and there is no evidence that Liles' termination of the agreement affected any employee expectations about the terms of employment. Second, in *Merk*, union bylaws required that the collective bargaining agreement be ratified by the union membership. If the "reopener" provision was enforced, then Jewel and the union would have circumvented the ratification requirement. *Id.* at 896. In this case, there is no evidence that Liles' employees had any say in the terms of the CBA.

Accordingly, national labor policy does not require, as in *Merk*, that the court exclude evidence of any side-deal to vary the terms of the CBA, and a genuine dispute of material fact exists whether Liles' ever became bound to the 2004-2008 CBA and whether Liles is required to pay dues for employees performing "shop work."

**B.    Liability Among Defendants**

Plaintiffs contend that for purposes of liability in this case, Putnam County Painting, Putnam Inc. and IVC should all be treated as one. They rely on two related labor law doctrines. First, under the single employer doctrine, two separate entities operating side-by-side may be treated as one in certain circumstances. A court examines four factors: "(1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership." *Trs. Of Pension, Welfare and Vacation Fringe Benefit Funds of IBEW Local 701 v.*

*Favia Electric Co., Inc.*, 995 F.2d 785, 788 (7th Cir. 1993) (citing *South Prairie Constr. Co. v. Int'l Union of Operating Eng'rs,* 425 U.S. 800, 803 (1976); *Radio and Television Broadcast Technicians Local Union v. Broadcast Service of Mobile, Inc.,* 380 U.S. 255, 256 (1965)). Plaintiffs contend that IVC is a single employer with Putnam County Painting and Putnam Inc. because Liles owned and managed all three, they performed similar work, employed the same workers, and shared office space. Defendants do not dispute any of these facts nor do they contest plaintiffs' argument that the single employer doctrine applies. Accordingly, the court concludes that IVC should be treated as a single employer with Putnam County Painting and Putnam Inc.

Second, plaintiffs contend that Putnam Inc. is the disguised continuance or alter ego of Putnam County Painting. The alter ego doctrine is similar to the single employer doctrine (although all the single-employer elements need not be met) but also turns upon "the existence of a disguised continuance of a former business entity or an attempt to avoid the obligations of a collective bargaining agreement, such as through a sham transfer of assets. In sum, unlawful motive or intent are critical inquiries in an alter ego analysis . . . ." *Favia Electric*, 995 F.2d at 789 (quoting *Int'l Union of Operating Eng'rs, Local 150, AFL-CIO v. Centor Contractors, Inc.*, 831 F.2d 1309, 1312 (7th Cir. 1987)). Defendants assert that because there is no evidence of a motive or intent to evade the collective bargaining agreement, Putnam Inc. is not an alter ego. However, defendants do not dispute that the operation of Liles' business remained unchanged after the creation of Putnam Inc. Liles simply shifted operations to the new corporation. All evidence suggests that the switch in form was "a mere technical change in the structure or identity of the employing entity . . . . In these circumstances, the courts have had little difficulty holding that the successor is in reality the same employer and is subject to all the legal and

contractual obligations of the predecessor." *Howard Johnson Co., Inc. v. Detroit Local Joint Executive Bd., Hotel & Restaurant Employees & Bartenders Int'l Union, AFL-CIO*, 417 U.S. 249, 259 n.5 (1974). Defendants suggest no argument, nor do they point to any facts, which would permit a fact finder to conclude that Putnam Inc. was anything other than the (barely) disguised continuance of Putnam County Painting. Accordingly, the court concludes that there is no dispute of material fact that defendants each share the same liability under the CBAs.

## IV. CONCLUSION[7]

Plaintiffs' motion for summary judgment is granted in part and denied in part.

ENTER:

                        /s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: March 30, 2011

---

[7] Defendants raise an additional issue in their brief. They contend that a dispute of fact exists over the amount of damages owed because "The Audit Reports were based on assumptions made by the auditors rather than on concrete evidence." (Defs.' Resp. at 9.) This argument is unavailing because defendants point to no evidence contradicting any of the auditor's assumptions or calculations. Nor do they bother to cite any legal authority. However, given the court's other rulings—that defendants' obligation under the CBAs may have ended on April 30, 2008 and that a dispute of fact exists over the extent of defendants' obligation to the Union—the amount of damages will need to be recalculated.