UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| CHARLES ANDERSON et al., | ) | |
|---|---|---|
| | ) | Case No. 06 C 4229 |
| Plaintiffs, | ) | |
| v. | ) | Judge Joan B. Gottschall |
| | ) | |
| NORMAN LILES et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION & ORDER**

Before the court is the plaintiffs' motion for reconsideration of this court's March 30, 2011 opinion partially denying their motion for summary judgment.

### I. BACKGROUND

The plaintiffs, a local painter's union (the "Union") and trustees of various benefit funds (the "Funds"), sued Norman Liles, a sole proprietor doing business as Putnam County Painting, Putnam County Painting, Inc., and Illinois Valley Coating, Inc., to recover fringe benefit contributions, dues, and assessments allegedly owed per the terms of three collective bargaining agreements ("CBAs"). According to Liles, before he signed the 1999-2004 CBA, Mark Leonard, a Union agent, promised him that "painters working in Liles' 'shop' would not become Union members," and "'if it doesn't work out, you just let me know and you can get out of the union at any time you want. You just call me and tell me you want out of the union and you're out.'" *Anderson v. Liles*, No. 06 C 4229, --- F. Supp. 2d ----, 2011 WL 1195772, at *2 (N.D. Ill. Mar. 30, 2011) (quoting Liles Dep. at 60-61, ECF Nos. 130-2, 130-3, 130-4, 130-5, 130-6).

The first two CBAs, which were in effect from 1999 through 2004 and 2004 through 2008, contained an evergreen (or automatic renewal) clause, which provided:

> This agreement shall be in effect until April 30, [*ending year*], and shall continue in effect from year to year thereafter and, unless the parties otherwise agree, the parties hereto hereby specifically adopt the Agreement between the Union and the Association for the contract period subsequent to April 30, [*same year as above*],

and each such subsequent Agreement thereafter unless written notice of such termination of Agreement is given from the Employer or the Union at least one hundred and twenty (120) days prior to the expiration of the then current Agreement adopted by reference.

(1999-2004 CBA at Art. XVII § 1, ECF No. 127-5; 2004-2008 CBA at Art. 18 § 18.1, ECF No. 127-6.)

Liles contends that he terminated any contractual obligation he had to the Union or Funds when he sent them a letter on April 30, 2004 wherein he stated, "Please be advised that the new collective bargaining agreement is not acceptable to me and is not in our best business interest. Therefore, I will not be signing the agreement. Please consider this my official notice, that as of May 1, 2004, I am withdrawing from the union." (Liles Dep. Ex. 1 at 2, ECF No. 130-7.) In a reply letter dated May 10, 2004, the Union wrote, in pertinent part, "Be advised that your notice of termination is untimely." (Liles Dep. Ex. 2 at 4, ECF No. 130-7.) On May 20, 2004, Liles sent another letter, in which he wrote, "I am still standing with my decision to withdraw from the painters' union" and "For the jobs where union painters will be employed, I will continue to pay into the benefits program for them." (Liles Dep. Ex. 3 at 6, ECF No. 130-7.)

## I. LEGAL STANDARD

"The purpose of [a motion for reconsideration] is to bring the court's attention to newly discovered evidence or to a manifest error or law or fact." *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 368 (7th Cir. 2003). "A 'manifest error' is not demonstrated by the disappointment of the losing party." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). Rather "[i]t is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Id*. (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). "A district court may reconsider a prior decision when there has been a significant change in the law or facts since the parties presented the issue to the court, when the court misunderstands a party's arguments, or when the court overreaches by deciding an issue not properly before it." *United*

*States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008). "However, because judicial opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure, motions to reconsider are not appropriate vehicles to advance arguments already rejected by the Court or new legal theories not argued before the ruling." *Schilke v. Wachovia Mortg., FSB*, 758 F. Supp. 2d 549, 554 (N.D. Ill. Dec. 14, 2010) (citations and quotations omitted); *see Neal*, 349 F.3d at 368 (holding that it was not an abuse of discretion for the district court to deny a motion to reconsider wherein "the plaintiffs simply took the opportunity to reargue the merits of their cases").

## II. ANALYSIS

The plaintiffs argue that the court made a manifest error of the law when: (a) it found that Liles' April 30, 2004 letter "would have been sufficient to end Liles' [contractual] obligation to the Funds as of April 30, 2008," *Anderson*, 2011 WL 1195772, at *4, and (b) held that the parol evidence rule did not bar evidence of the oral agreement Liles alleges he made with the Union. The court will address each argument in turn.

**A.      The court did not err when it found that Liles' April 30, 2004 letter terminated Liles' contractual obligation to the Funds as of April 30, 2008.**

As an initial matter, the plaintiffs' motion for reconsideration on this point is denied because the plaintiffs do nothing more than reiterate an argument they made in support of their motion for summary judgment; namely, that Liles' notice of termination "was neither timely nor clear and unambiguous," (Pls.' Mem. in Supp. of Mot. for Summ. J. at 11, ECF No. 125.) *See Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004) ("'Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion.'" (quoting *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996))).

1.      <u>Liles' Notice of Termination Was Timely</u>

The plaintiffs argue that the last dependent clause of the evergreen clause (the portion beginning with "unless written notice . . .") is only amenable to one interpretation: namely, that written notice of termination must be given at least 120 days before the expiration date of the CBA in effect on the date the notice is sent and cannot terminate a CBA that was not in effect on the date the notice was sent.[1] (*See* 1999-2004 CBA at Art. XVII § 1, ECF No. 127-5 (". . . unless written notice of such termination of the Agreement is given from the Employer or the Union at least one hundred twenty (120) days prior to the expiration of the then current Agreement adopted by reference.")). Accordingly, the plaintiffs argue the court disregarded controlling precedent that requires the court to "enforce the terms of [collective bargaining agreements] when those terms are unambiguous" since, given that Liles sent his letter on April 30, 2004, the "then current Agreement" was the 1999-2004 CBA, and Liles' letter could not have had any effect on the 2004-2008 CBA. (Pls.' Mem. in Supp. of Mot. to Reconsider at 4, ECF No. 159 (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Hartlage Truck Serv.*, 991 F.2d 1357, 1361 (7th Cir. 1993))).

In its March 30, 2011 opinion, the court agreed that the last dependent clause of the evergreen clause was only amenable to one interpretation, but did not identify the plaintiffs' interpretation as the correct one. Rather, the court held that this language meant that written

---

[1] The plaintiffs cite *Illinois District Council No. 1 of the International Union of Bricklayers v. R & R Masonry, Inc.*, No. 94 C 7377, 1996 WL 627635 (N.D. Ill. Oct. 28, 1996), in support of their contention that a notice of termination sent while one CBA is in effect cannot terminate a subsequent CBA, but *R & R Masonry* is distinguishable. The evergreen clause at issue there required written notice of termination "not less than 60 and not more than 90 days prior to the termination of the applicable Association Agreement." *Id.* at *5. Accordingly, given that the employers' April 2, 1990 notice of termination was sent exactly 60 days before one agreement terminated (and the earliest it could have been received was the next day (less than 60 days before the agreement terminated)), it is clear that the notice could not have timely terminated any subsequent agreement – since it is highly unlikely that a notice of termination sent 60 days before one agreement ended would have been received between 60-90 days before a subsequent agreement terminated. It is no surprise, then, that the court there reasoned, "[B]ecause Defendants have not properly terminated their contractual relationship with the Council to date, [the employers] remain, and have remained since June 1, 1990, bound by the terms of the Memorandum – including the obligation to make fringe benefit fund contributions." *Id.* The plaintiffs imply that this supports their argument that one notice of termination, found by the court to be too late to terminate the current agreement, could not have the effect of terminating a subsequent agreement. However, the evergreen clause at issue here, unlike the evergreen clause at issue in *R & R Masonry*, merely requires that notice of termination be given 120 days prior to the expiration of the "then current" CBA. Accordingly, it is feasible that a notice of termination that was not given in time to terminate one CBA might nevertheless be timely to terminate the subsequent CBA.

notice of termination must be given at least 120 days before the expiration of a given CBA. The plaintiffs note that the evergreen clause requires written notice to be given at least 120 days before the expiration of the "then current" CBA; they argue that the inclusion of the words "then current" means that a notice of termination can only terminate the CBA in effect on the date the notice was sent. However, the plaintiffs fail to point to any such language and the court cannot retroactively amend the CBAs to make them state as much. *See PPM Fin., Inc. v. Norandal USA, Inc.*, 392 F.3d 889, 893 (7th Cir. 2004) ("[C]ourts are not in the business of rewriting contracts to appease a disgruntled party unhappy with the bargain it struck." (citations omitted)). While it is true that the evergreen clause refers to the "then current" CBA, it is also true that a subsequent agreement containing the same evergreen clause will eventually become the "then current" Agreement, such that any written notice of termination that failed (for untimeliness) to terminate one CBA would provide timely notice of termination of the next CBA (unless, of course, the notice of termination, by its terms, only applied to the CBA in effect on the date the notice was sent). Accordingly, if Liles' April 30, 2004 letter failed (for untimeliness) to terminate the 1999-2004 CBA, then it was clearly sufficiently timely to terminate the 2004-2008 CBA.

Nevertheless, even assuming that the court was persuaded by the plaintiffs' repetition of their earlier arguments, the same result would obtain. The plaintiffs concede, as they must, that a notice of termination is effective when received, not on the date it was mailed. *See Chi. Painters & Decorators Pension, Health & Welfare & Deferral Sav. Plan Trust Funds v. Hickory Decorating, Co.*, No. 85 C 6829, 1986 WL 12273, at *1 (N.D. Ill. Oct. 23, 1986) ("It is well established in the contracts field that acceptances are effective upon dispatch and terminations only upon actual receipt . . . Thus the date for measuring whether adequate notice was given is August 8, 1984, the date the Union actually received the notice of intent to terminate." (citations omitted)). The plaintiffs do not allege that anything in the CBAs modifies this default rule.

Accordingly, the focus must be when the letter was received, not when it was sent. The earliest the plaintiffs could have received Liles' letter – which he sent via U.S. mail on April 30, 2004 – was the next day, May 1, 2004. *See R & R Masonry, Inc.*, 1996 WL 627635, at *7 ("Burke's letter was first sent on April 2, 1990 – the last day of the 60-day notice period – and was not received by the Council until, at earliest, April 3, 1990."). On May 1, 2004, the 2004-2008 CBA went into effect and became the "then current Agreement." Per the evergreen clause of the 2004-2008 CBA, written notice of termination of the 2004-2008 CBA was effective so long as it was given 120 days before the 2004-2008 CBA expired. Liles' written notice was clearly given 120 days before the 2004-2008 CBA expired.[2]

Furthermore, *Central States, Southeast & Southwest Areas Pension Fund v. Kabbes Trucking Co.*, 2004 WL 2644515 (N.D. Ill. Nov. 18, 2004), on which the plaintiffs rely in arguing that Liles' April 30, 2004 letter was not effective to terminate the 2004-2008 CBA, is inapposite. In *Kabbes Trucking Co.*, a union sent an employer a letter dated April 15, 1986 informing the employer that it "desire[d] to negotiate certain changes and modifications in our now existing collective bargaining . . . [which] expires on June 30, 1986." *Id.* at *4. However, there was no collective bargaining agreement that expired on June 30, 1986. Moreover, six years later, the employer signed additional collective bargaining agreements. *Id.* at *3. The employer argued that the April 15, 1986 letter terminated at least one of the pre-1986 collective bargaining agreements. *Id.* at *19. The court held that the April 15, 1986 letter did not terminate any collective bargaining agreement.

The court reasoned that the April 15, 1986 "letter was signed *before* either [of the later agreements] were signed." *Id.* "Therefore, these agreements must supercede the April 15, 1986

---

[2] The plaintiffs complain that Liles may not raise new arguments in response to a motion for reconsideration, so the court may not consider Liles' argument that a notice of termination is effective upon receipt, not when it was sent. However, the court would have discovered this case law on its own, so it does not matter that Liles made this argument.

6

letter." *Id.* Furthermore, since neither of the agreements at issue expired on June 30, 1986, "the notice could not possibly terminate those agreements." *Id.* The court also reasoned that several other factors (not relevant here) supported the conclusion that the April 15, 1986 letter did not terminate the employer's contractual obligation. *Id.*

*Kabbes Trucking Co.* is distinguishable from the instant case. In *Kabbes Trucking Co.*, the parties actually signed a new agreement after the letter was sent. By doing so, the employer affirmatively indicated its intent to be bound, thereby negating any intent expressed by the earlier letter to terminate the agreement. Given this, it makes sense that the court found that the employer's later act of signing additional agreements superseded the earlier act of sending the April 15, 1986 letter.

The same cannot be said here. Here, the plaintiffs argue that the 2004-2008 CBA superseded Liles' April 30, 2004 letter because an evergreen clause in the 1999-2004 letter automatically brought the 2004-2008 CBA into effect. However, unlike *Kabbes Trucking Co.*, that an evergreen clause brought the 2004-2008 CBA into effect does not constitute an affirmative act on Liles' part that negated his intent (communicated in the April 30, 2004 letter) to terminate his contractual obligations to the Union. Moreover, the 2004-2008 CBA could not have superseded a subsequently-received notice of termination.

Furthermore, *Kabbes Trucking Co.* is distinguishable in that the letter at issue there explicitly referred to an expiration date for the agreement it was regarding. Liles' letter does not include specifics about the agreement to which he is referring. Rather, Liles' letter refers generally to his contractual obligation to the Union. In their reply, the plaintiffs argue that Liles admitted that he sent his April 30, 2004 letter specifically to terminate the 1999-2004 CBA (not the agreement in general, the 2004-2008 agreement, or the 2008-2013 agreement). However, the portions of the record to which the plaintiffs refer the court do not support this assertion.

7

2. <u>Liles' Notice of Termination Was Clear</u>

The plaintiffs further argue that the court erred when it concluded that "it is hard to imagine how the April 30, 2004 letter could have been more definite." *Anderson*, 2011 WL 1195772, at *4. The plaintiffs cite *Central States, Southeast & Southwest Areas Pension Fund v. Gerber Truck Service*, 870 F.2d 1148 (7th Cir. 1989), for the proposition that an employer's "statement that he would not sign another agreement" is "dubious" as a notice of termination of [an] existing agreement." *Id.* at 1156. Liles wrote in his April 30, 2004 letter: "Please be advised that the new collective bargaining agreement is not acceptable to me and is not in our best business interest. Therefore, I will not be signing the agreement." (Liles' Dep. Ex. 1 at 2, ECF No. 130-7.) While it is true that this language alone is not a clear notice of termination, the court did not rely on this language in finding that that the letter effectively terminated the 2004-2008 CBA.

Rather, the court relied on the following language from Liles' April 30, 2004 letter: "Please consider this my official notice, that as of May 1, 2004, I am withdrawing from the union." *Anderson*, 2011 WL 1195772, at *4. It is this language that the court found to be clear, unambiguous, explicit, and unequivocal. *See Kabbes Trucking Co.*, 2004 WL 2644515, at *19 ("A notice to terminate a collective bargaining agreement must be clear and explicit." (citing *Louisiana Bricklayers Welfare Fund v. Alfred Miller Contracting Co.*, 157 F.3d 404, 409 (5th Cir. 1998), and *Office & Prof'l Emp. Int'l Union, Local 42 v. United Auto., Aerospace & Agric. Implement Workers of Am., Westside Local No. 174,* 524 F.3d 1316, 1317 (6th Cir. 1975)); *Cent. States, Se. & Sw. Areas Pension Fund v. McLain Trucking, Inc.*, No. 89 C 0206, 1990 WL 141426, at *3 (N.D. Ill. Sept. 21, 1990) ("A notice of termination of a collective bargaining agreement is not effective unless it is clear and unambiguous." (citing, *inter alia*, *Int'l Union of Operating Eng'rs, Local No. 181 v. Dahlem Constr. Co.*, 193 F.2d 470, 475 (6th Cir. 1975), and *Irwin v. Carpenters Health & Welfare Trust Fund for Cal.*, 745 F.2d 553, 556-57 (9th Cir.

8

1984))). While Liles did not use the word "terminate" in stating that he was "withdrawing from the Union," Liles clearly communicated his intent to terminate any contractual obligations between himself and the Union and Funds, including the various CBAs.[3] Liles also manifested his intent to rescind any authority the Union previously had to negotiate a new CBA on his behalf. Therefore, given that this written notice of termination was both clear and timely, Liles is not bound by the 2008-2013 CBA.

It does not matter that Liles' May 20, 2004 letter stated, "For the jobs where union painters will be employed, I will continue to pay into the benefits program for them." (Liles Dep. Ex. 3 at 6, ECF No. 130-7.); *see Louisiana Bricklayers Welfare Fund*, 157 F.3d at 409 (reasoning that the employer equivocated by agreeing to abide by the terms of the CBA "for the immediate future" since the letter at issue there "clearly presupposes future action prior to the complete rejection of the CBA"). This is so because Liles' April 30, 2004 letter effectively terminated any obligation Liles had under the 2008-2013 CBA. Therefore, by May 20, 2004, it already was clear that, barring further action by the parties (i.e. signing the 2008-2013 CBA anew), Liles would not be bound to the 2008-2013 CBA. The May 20, 2004 letter does not change that.

The plaintiffs argue that "as a matter of federal labor law, Liles cannot simply walk away from his contractual obligations, but instead must bargain in good faith with the Union until either a new contract is reached or there is an impasse." (Pls.' Mem. in Supp. of its Mot. to Reconsider at 6, ECF No. 159 (citing 29 U.S.C. § 158(a)(5)).) However, Liles is correct that this is an entirely separate issue from whether his April 20, 2004 letter provided clear and timely notice of termination.

---

[3] The Union itself understood Liles' letter in this way and does not suggest any other way his words could be understood. (*See* Liles Dep. Ex. 2 at 4, ECF No. 130-7 (referring to Liles' letter as a "notice of termination").)

Accordingly, the plaintiffs' motion for reconsideration of this point is denied. In addition, for all the reasons discussed above, and because there is no factual dispute at issue here, the court *sua sponte* grants summary judgment in Liles' favor insofar as Liles is not contractually bound by the 2008-2013 CBA.

**B. Because the 1999-2004 CBA is integrated, Liles' parol evidence about the alleged oral agreement is inadmissible, and it is clear that Liles was contractually obligated to the Union (in accordance with the 1999-2004 CBA, then the 2004-2008 CBA) through April 30, 2008.**

The court is persuaded by the plaintiffs' argument that the 1999-2004 CBA is, in fact, a completely integrated agreement even though it lacks a merger clause.[4] Accordingly, the court reconsiders its previous decision to the extent it ruled to the contrary.

As in *Merk*, the CBA at issue here (the 1999-2004 CBA) "did not on its face clearly indicate whether it was intended to incorporate all the terms of the contract." *Merk*, 945 F.2d at 893. Nevertheless, the court concludes that the 1999-2004 CBA was completely integrated. An agreement is integrated when "it was intended to be the final expression of the parties' agreement, superseding any preliminary agreements."[5] *Air Line Pilots Ass'n v. Midwest Exp.*

---

[4] However, the plaintiffs argument that the court's "legal conclusion is not based on any precedent and contradicts well-established legal principles governing the application of the parol evidence rule to unambiguous, completely integrated agreements like the CBA" is incorrect. First of all, the court rejected the plaintiffs' premise – that the 1999-2004 CBA was completely integrated. *See Anderson*, 2011 WL 1195772, at *4 (distinguishing this case from *Central States, Se. & Sw. Areas Pension Fund v. Auffenberg Ford, Inc.*, No. 08 C 1103, 2009 WL 2145384 (N.D. Ill. July 9, 2009), on the basis that while the evidence in *Auffenberg* "suggested that the written agreement was intended to embody the parties' final bargain," "[t]he same cannot be said about the evidence in this case"). Secondly, as was clearly explained in the court's March 30, 2011 opinion (and as the plaintiffs themselves acknowledge two pages after denying as much), the court's holding was based on binding precedent – *Merk v. Jewel Food Stores Division of Jewel Cos., Inc.*, 945 F.2d 889 (7th Cir. 1991), which held that the "court may consider parol evidence in determining . . . whether or not [a] writing is completely or partially integrated," and *Herzog Contracting Corp. v. McGowen Corp.*, 976 F.2d 1062 (7th Cir. 1992), which explained that "It is well settled that whatever the formal documentary evidence, the parties to a legal transaction may always show that they understood a purported contract not to bind them; it may, for example, be a joke, or a disguise to deceive others." *Anderson*, 2011 WL 1195772, at *4 (citing *Merk*, 945 F.2d at 893, and *Herzog*, 976 F.2d at 1067).

[5] The plaintiffs cite cases applying Illinois law in support of their argument that the 1999-2004 CBA is integrated. While the court may consider this case law as persuasive authority, the court is obliged to "apply[] federal common law (rather than the law of any state) to [suits] for breach of a collective bargaining agreement." *Merk*, 945 F.2d at 892; *accord Mohr v. Metro East Mfg. Co.*, 711 F.2d 69, 71 (7th Cir. 1983) ("The law of contracts that is applied in suits under section 301(a) of the Labor Management Relations Act to enforce collective bargaining

*Airlines*, 279 F.3d 553, 558 (7th Cir. 2002). In addition, "[w]here the parties reduce an agreement to a writing which in view of its completeness and specificity reasonably appears to be a complete agreement, it is taken to be an integrated agreement unless it is established by other evidence that the writing did not constitute a final expression." Restatement (Second) of Contracts, § 209(3). Liles himself admits that the agreement is complete and that he signed it. (Defs.' Am. Resp. to Pls.' L.R. 56.1(a)(3) Stmts. ¶¶ 15 & D(1), ECF No. 144.); *See Anheuser-Busch, Inc. v. Beer, Soft Drink, Water, Fruit Juice, Carbonic Gas, Liquor Sales Drivers*, 280 F.3d 1133, (7th Cir. 2002) (noting that "the parties ha[d] stipulated that the contract before [them was] an *unambiguous, exclusive statement of the parties' rights and obligations*"). In addition, the agreement is specific and thorough and does not appear to be missing any relevant terms. *See Anheuser-Busch*, 280 F.3d at 1141 ("Carefully written, well-reasoned, and thoroughly negotiated contracts are presumptively complete . . . ."); *cf. L.S. Heath & Son, Inc. v. AT&T Info. Sys.*, 9 F.3d 561, 569 (7th Cir. 1993) (finding that an agreement was not integrated where it omitted the subject matter of the agreement, prices, products, services, software applications, or configurations). Indeed (considering the parol evidence for the purposes of determining whether the 1999-2004 CBA is integrated), Liles does not contend that the oral agreement contained additional terms that were missing from the 1999-2004 CBA – in fact, the 1999-2004 CBA contained an evergreen clause setting forth the procedure for terminating the agreement; rather, Liles contends that the oral agreement modified the evergreen clause, a term that *was* included in the 1999-2004 CBA. *See Merk*, 945 F.2d at 893 (explaining that a district court may consider parol evidence in resolving the antecedent question of whether a collective bargaining agreement is integrated). This is consistent with his admission that the 1999-2004 CBA is actually complete, since he does not contend that it is missing a term. Liles' contention boils down to an

---

agreements is federal common law, rather than the law of the state where the agreement is signed or performed, or of any other state." (citing *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448 (1957))).

argument that the 1999-2004 CBA was inconsistent with the terms of the agreement he entered into with the Union, not that it incompletely memorialized the terms of their agreement.[6] Accordingly, the 1999-2004 CBA is integrated and evidence of the oral agreement Liles argues he made with the Union is inadmissible parol evidence. *See Merk*, 945 F.2d at 892 ("The parol evidence rule provides that evidence of prior or contemporaneous agreements or negotiations may not be introduced to contradict the terms of a partially or completely integrated writing."). Because the evergreen clause is unambiguous, the court must enforce its terms. Per the terms of the 1999-2004 CBA, once it expired, Liles became bound to the next CBA – the 2004-2008 CBA. As discussed above, Liles' April 30, 2004 letter terminated his contractual obligations to the Union and the Funds but only as of April 30, 2008.

Accordingly, the plaintiffs are entitled to summary judgment insofar as Liles is bound to the 1999-2004 CBA and the 2004-2008 CBA and is liable to the Union as specified therein.[7]

### III.  CONCLUSION

For the foregoing reasons, the plaintiffs' motion for reconsideration of this court's March 30, 2011 partial denial of their motion for summary judgment is granted in part and denied in part. The plaintiffs are entitled to summary judgment insofar as Liles is contractually bound by the 1999-2004 and 2004-2008 CBAs; Liles is entitled to summary judgment insofar as he is not

---

[6] Liles' reliance on *Mohr* is misplaced. In *Mohr*, the Seventh Circuit reasoned that since "it is not the purpose of industry-wide collective bargaining to erase all differences in labor relations within the industry," "sensitivity to context is required" when "deciding whether the premise for applying the [parol evidence] rule to a particular contract – that a written agreement or agreements were intended to be a complete expression of the agreement between the [parties] – is present." *Mohr*, 71 F.2d at 72. The defendants in *Mohr* had entered into a "supplemental agreement . . . covering specific terms and conditions of employment." *Id.* This fact demonstrated that "the master [collective bargaining] agreement was not intended to be the complete agreement of [the employer and the union]." *Id.* Liles argues that the 1999-2004 CBA is "a master, industry-wide agreement for which Liles did not participate in negotiations." (Defs.' Mem. in Supp. of Resp. at 6-7, ECF No. 167.) Nevertheless, Liles does not point to any supplemental agreements that he entered into with the Funds and/or the Union that would show that the 1999-2004 CBA was not integrated. Thus, *Mohr* is distinguishable.

[7] The court has already ruled that Liles was liable for contributions due to the Funds under the 2004-2008 CBA. *See Anderson*, 2011 WL 1195772, at *3 ("In this case, by failing to comply with the 120 day notice provision in the written agreement, Liles [became] bound to make contributions under the 2004-2008 CBA.").

contractually bound by the 2008-2013 CBA, having terminated his contractual obligations as of April 30, 2008.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: July 29, 2011